## GENERAL TALKING PICTURES CORPORATION *v.* WESTERN ELECTRIC CO. ET AL.

No. 1.   Reargued October 19, 20, 1938.—Decided November 21, 1938.

*Messrs. Samuel E. Darby, Jr.* and *Ephraim Berliner,* with whom *Mr. Joseph J. Zeiger* was on the brief, for petitioner.

*Mr. Merrell E. Clark,* with whom *Mr. Henry R. Ashton* was on the brief, for respondents.

By leave of Court, *Solicitor General Jackson, Assistant Attorney General Arnold* and *Mr. Charles E. Clark* filed a brief on behalf of the United States as *amicus curiae,*

contending that the two questions upon which the rehearing was granted should be answered in the negative.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

In this case, we affirmed on May 2, 1938, 304 U. S. 175, the judgment of the Circuit Court of Appeals, 91 F. 2d 922, which held that petitioner had infringed certain patents relating to vacuum tube amplifiers. On May 31st, we granted a rehearing, 304 U. S. 587, upon the following questions which had been presented by the petition for certiorari.

1. Can the owner of a patent, by means thereof, restrict the use made of a device manufactured under the patent, after the device has passed into the hands of a purchaser in the ordinary channels of trade, and full consideration paid therefor?

2. Can a patent owner, merely by a "license notice" attached to a device made under the patent, and sold in the ordinary channels of trade, place an enforceable restriction on the purchaser thereof as to the use to which the purchaser may put the device?

Upon further hearing we are of opinion that neither question should be answered. For we find that, while the devices embody the inventions of the patents in suit, they were not manufactured or sold "under the patent[s]" and did not "pass into the hands of a purchaser in the ordinary channels of trade."

These are the relevant facts. Amplifiers embodying the invention here involved are useful in several distinct fields. Among these is (a) the commercial field of sound recording and reproducing, which embraces talking picture equipment for theatres, and (b) the private or home field, which embraces radio broadcast reception, radio amateur reception and radio experimental reception. For the commercial field exclusive licenses had been granted by the patent pool to Western Electric

Company and Electrical Research Products, Inc. For the private or home field the patent pool granted non-exclusive licenses to about fifty manufacturers. Among these was American Transformer Company. It was licensed

"solely and only to the extent and for the uses hereinafter specified and defined . . . to manufacture . . ., and to sell only for radio amateur reception, radio experimental reception and radio broadcast reception . . . licensed apparatus so manufactured by the Licensee. . . ."

The license provided further:

"Nothing herein contained shall be regarded as conferring upon the Licensee either expressly or by estoppel, implication, or otherwise, a license to manufacture or sell any apparatus except such as may be manufactured by the Licensee in accordance with the express provisions of this Agreement."

Transformer Company, knowing that it had not been licensed to manufacture or to sell amplifiers for use in theatres as part of talking picture equipment, made for that commercial use the amplifiers in controversy and sold them to Pictures Corporation for that commercial use. Pictures Corporation ordered the amplifiers and purchased them knowing that Transformer Company had not been licensed to make or sell them for such use in theatres. Any use beyond the valid terms of a license is, of course, an infringement of a patent. Robinson on Patents, § 916. If where a patented invention is applicable to different uses, the owner of the patent may legally restrict a licensee to a particular field and exclude him from others, Transformer Company was guilty of an infringement when it made the amplifiers for, and sold them to, Pictures Corporation. And as Pictures Corporation ordered, purchased and leased them knowing the facts, it also was an infringer.

The question of law requiring decision is whether the restriction in the license is to be given effect. That a restrictive license is legal seems clear. *Mitchell* v. *Hawley*, 16 Wall. 544. As was said in *United States* v. *General Electric Co.*, 272 U. S. 476, 489, the patentee may grant a license "upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure." The restriction here imposed is of that character. The practice of granting licenses for a restricted use is an old one, see *Rubber Company* v. *Goodyear*, 9 Wall. 788, 799, 800; *Gamewell Fire-Alarm Telegraph Co.* v. *Brooklyn*, 14 F. 255. So far as appears, its legality has never been questioned. The parties stipulated that

"it is common practice where a patented invention is applicable to different uses, to grant written licenses to manufacture under United States Letters Patents restricted to one or more of the several fields of use permitting the exclusive or non-exclusive use of the invention by the licensee in one field and excluding it in another field."

As the restriction was legal and the amplifiers were made and sold outside the scope of the license the effect is precisely the same as if no license whatsoever had been granted to Transformer Company. And as Pictures Corporation knew the facts, it is in no better position than if it had manufactured the amplifiers itself without a license. It is liable because it has used the invention without license to do so.

We have consequently no occasion to consider what the rights of the parties would have been if the amplifier had been manufactured "under the patent" and "had passed into the hands of a purchaser in the ordinary channels of trade." Nor have we occasion to consider the effect of a "licensee's notice" which purports to restrict the use of articles lawfully sold.

*Affirmed.*
[Over.]

MR. JUSTICE ROBERTS took no part in the consideration or decision of the case.

MR. JUSTICE BLACK, dissenting.

Almost a century ago, this Court asserted, and time after time thereafter it has reasserted, that when an article described in a patent is sold and "passes to the hands of a purchaser, it is no longer within the limits of the monopoly. It passes outside of it, and is no longer under the protection of the act of Congress. . . . Contracts in relation to it are regulated by the laws of the State, and are subject to State jurisdiction." [1]

---

[1] *Bloomer* v. *McQuewan*, 14 How. 539, 549–50; see, *Chaffee* v. *Boston Belting Co.*, 22 How. 217, 223; *Mitchell* v. *Hawley*, 16 Wall. 544, 547; *Adams* v. *Burke*, 17 Wall. 453; *Wade* v. *Metcalf*, 129 U. S. 202, 205; *Boesch* v. *Graff*, 133 U. S. 697, 702; *Hobbie* v. *Jennison*, 149 U. S. 355; *Morgan Envelope Co.* v. *Albany Paper Co.*, 152 U. S. 425; *Keeler* v. *Standard Folding Bed Co.*, 157 U. S. 659; *Bauer & Cie* v. *O'Donnell*, 229 U. S. 1; *Straus* v. *Victor Talking Machine Co.*, 243 U. S. 490; *Motion Picture Patents Co.* v. *Universal Film Co.*, 243 U. S. 502; *Boston Store* v. *American Graphophone Co.*, 246 U. S. 8. The rule asserted in these cases is in accord with the views of Thomas Jefferson who served as a member of the first Patent Board established by the first Patent Act of 1790 (1 Stat. 109) and who also drafted the comprehensive Patent Law of 1793 (1 Stat. 318). See, "The Jeffersonian Cyclopedia," p. 680 (Funk and Wagnalls, 1900). The Acts of 1790 and 1793 granted patentees for fourteen years the exclusive right "of making, constructing, using and vending to others to be used." Mr. Jefferson, referring to the general rules adopted by the first Patent Board, said: "One of these [rules] was, that a machine *of which we were possessed, might be applied by every man to any use of which it is susceptible,* and that this right ought not to be taken from him and given to a monopolist, because the first perhaps had occasion so to apply it. Thus a screw for crushing plaster might be employed for crushing corn-cobs. And a chain-pump for raising water might be used for raising wheat: this being merely a change of application." "The Writings of Thomas Jefferson," Vol. VI, H. A. Washington, Editor, p. 181 (Published by Order of the Joint Committee of Congress on the Library, 1861). After the Patent Board's duties devolved upon the courts, Mr. Jefferson suggested that

A single departure from this judicial interpretation of the patent statute [2] was expressly overruled within five years, and this Court again reasserted that commodities— once sold—were not thereafter "subject to conditions as to use" imposed by patent owners.[3] In result, the judgment here is a second departure from the traditional judicial interpretation of the patent laws.

As a consequence of the return to the interpretation of the patent statutes previously repudiated and expressly overruled, petitioner is enjoined from making full use of, and must account in triple damages for using

the rule be "adopted by the judges" that *"the purchaser of the right to use the invention should be free to apply it to every purpose of which it is susceptible."* *Id.,* p. 372. (Italics supplied.)

*United States* v. *General Electric Co.,* 272 U. S. 476, relied on by the majority here, was not a suit for infringement of a patent, but was an action by the United States under the anti-trust laws. The opinion was written by Chief Justice Taft and applied some of the reasoning of the *Button-Fastener* case, 77 F. 288, in which he had agreed as Circuit Judge to the opinion of Circuit Judge Lurton. Later, this Court in *Henry* v. *Dick Co.,* 224 U. S. 1, with the then Justice Lurton writing the opinion, followed the *Button-Fastener* case. *Motion Picture Patents Co.* v. *Universal Film Co., supra,* expressly overruled and repudiated the doctrine of the *Dick* case. In effect, the judgment here once more revives the doctrine of the *Button-Fastener* case.

The majority opinion also relies upon *Mitchell* v. *Hawley, supra.* It is significant that in the *Hawley* case the patentee never licensed or transferred his exclusive right to sell; and the license conveyed only "the exclusive right to make and use *'and to license to others the right to use . . .'* " 16 Wall., at 548. That case, therefore, does not justify the judgment here where the patentee's power to vend was both transferred and exercised.

[2] *Henry* v. *Dick Co.,* 224 U. S. 1, decided March 11, 1912.

[3] *Motion Picture Patents Co.* v. *Universal Film Co., supra,* 516, Similarly, the exercise of the right to vend exhausts the right under a patent to control the price at which an article claimed in the patent may subsequently be sold. *Bauer & Cie* v. *O'Donnell; Straus* v. *Victor Talking Machine Co.; Boston Store* v. *American Graphophone Co., supra.*

tubes and amplifiers which he owns. He became the owner of the tubes by purchase from various retailers authorized by respondents to sell in the open market. He became the owner of the amplifiers by purchase from a manufacturer who—having the complete right to make them—had contracted to sell only for limited uses.[4] The departure here permits the patentee—by virtue of his contract with the manufacturer—to restrict the uses to which this purchaser and owner may put his tubes and amplifiers.

Transformer Company was authorized by the patentee to make and to sell amplifiers. It did make such amplifiers—of a standard type usable in many fields,[5] they

---

[4] License Agreement. ". . . That Whereas the Licensors represent that they severally own and/or have the right to grant licenses under various United States Letters Patent relating to Power Supply and to Power Amplifier Units, hereinafter termed Licensed Apparatus, . . .

"1. Each of the Licensors hereby grants under all of the United States Patent useful in the Licensed Apparatus, owned by it and/or with respect to which it has the right to grant licenses, . . . solely and only to the extent and for the uses hereinafter specified and defined, a personal, indivisible, non-transferable and non-exclusive license to the Licensee to *manufacture* at its factory . . .; and not elsewhere without previous written permission obtained from the Radio Corporation, and *to sell only for radio amateur reception, radio experimental reception, and radio broadcast reception* throughout the United States and its territories or dependencies, Licensed Apparatus so manufactured by the Licensee, . . ." (Italics supplied.) Reasonably interpreted, this contract grants the right to make everything described in the patents; the sole limitation on the right to *make* relates to the place of manufacture. The contract grants the right to *sell* the manufactured articles with an attempt by notice to restrict their use in the hands of owners to whom they are sold.

[5] One of respondents' officials testified: "These things, these vacuum tubes and the circuits on which we have patents, are useful in various of these fields and applicable to many fields. And if we granted licenses not restricted to any particular field, the same things could be used in these other fields." The injunction sustained here was decreed by the District Judge on the basis of his conclusion that the

became its property when made, were *sold* to and became the property of petitioner. The prior opinion in this case, both courts below and the opinion on this rehearing, *all* refer to the transaction between Transformer Company and petitioner as a *sale*. Even the very contract authorizing the Transformer Company to make and sell the amplifiers provided "That for the purpose of this agreement all Licensed Apparatus shall be considered as 'sold' when the Licensed Apparatus has been billed out, or if not billed out, when it has been delivered, shipped, or mailed."

Notice to the purchaser in any form could not—under the patent law—limit or restrict the use of the amplifiers after they were sold [6] and knowledge by both vendor and purchaser that the articles were purchased for use outside the "field" for which the vendor had been given the right to sell, made the transaction between them no less a sale.[7] Had petitioner—after making the purchase— decided *not* to use these amplifiers in the forbidden fields, or had they been destroyed prior to such use, certainly the mere state of mind of the parties at the time of sale would not have made them both infringers.

Indeed, petitioner could use the amplifiers at all only in combination with tubes which it purchased on the open market from retailers authorized by respondents to sell. Therefore, even if the state of mind of vendor and purchaser were material, Transformer Company could

---

amplifiers put to commercial use by petitioner could also be used "for experimental or radio amateur use" as the patentee had desired. 16 F. Supp. 293, 303. Thus, it appears that the very amplifiers made and sold to petitioner were suitable for all "fields."

[6] "The statutes relating to patents do not provide for any such notice and it can derive no aid from them." *Motion Picture Patents Co.* case, *supra*, 509; *Bauer & Cie* v. *O'Donnell*, *supra*; *Straus* case, *supra*; *Boston Store* case, *supra*; *Carbice Corporation* v. *American Patents Corp.*, 283 U. S. 27.

[7] *Hobbie* v. *Jennison*, *supra*; *Keeler* case, *supra*; *Straus* case, *supra*.

be considered an infringer only because it sold a commodity which might—depending on possible events after the sale—be used in infringing combination with another lawfully purchased commodity. The patent law was not intended to accomplish such result.[8]

Petitioner has persistently contended throughout this litigation that no existing trade practice permits a patentee—under guise of a "license"—to extend his monopoly to commodities after sale, and has not stipulated otherwise.[9] Neither stipulation nor practice could justify

---

[8] Cf., *Morgan Envelope Co.* v. *Albany Paper Co., supra.*

[9] The negotiations for stipulation were as follows:

"Mr. Neave: Mr. Darby, will you agree that it is common practice where a patented invention is applicable to different uses, to grant written licenses under United States patents restricted to one or more of the several fields of use, permitting exclusive or non-exclusive use of the invention by the licensee in one field and excluding its use in another field?

"Mr. Darby: I do not agree. As a matter of fact I believe that just the opposite or the contrary is true."

    ·    ·    ·    ·    ·

"Mr. Darby: . . . Mr. Ashton called me up and told me that Mr. W. H. Davis had entered into such a stipulation in the Independent Wireless Case, and asked me if I would do the same thing. I told him I could not conscientiously, because not only could I not agree that that was the common practice, but I know I thoroughly disagree with [it] whether it was or not. In other words I was confident that was not the common practice. In my own case, I know I would not allow my own clients to do it, because I did not think it was legal."

    ·    ·    ·    ·    ·

"Mr. Darby: I am willing to stipulate it, if it will be of any assistance to Mr. Ashton, that it is, if he tells me it is, the common practice of the Western Electric Company and the Radio Corporation to do that."

    ·    ·    ·    ·    ·

"Mr. Darby: It is stipulated that it is common practice where a patented invention is applicable to different uses, to grant written licenses to manufacturers under United States Letters Patents restricted to one or more of the several fields of use permitting the

extension of patent monopoly beyond the limits of legality fixed by Congress and recognized by this Court for over three-quarters of a century. "The statutory authority to grant the exclusive right to 'use' a patented machine . . . is precisely the same, as the authority to grant the exclusive right to 'vend,' . . ." [10] A widespread practice of restricting the resale price of articles described in patents [11] did not prevent this Court from holding that once the statutory right to vend has been exercised "the added restriction is beyond the protection and purpose of the act." [12] Similarly, a "common practice . . . to grant written licenses . . . restricted to one or more . . . fields of use" cannot prevent the application of "that line of cases in which this court from the beginning has held that a patentee who has parted with a patented machine by passing title to a purchaser has placed the article beyond the limits of the monopoly secured by the patent act." [13]

MR. JUSTICE REED joins in this dissent.

.

---

exclusive or non-exclusive use of the invention by the licensee in one field and excluding its use in another field. I stipulate that and I urge, however, objection to its receipt for any evidential purpose, as irrelevant and immaterial what the common practice is, on the issue of law as to whether or not it is legal."

[10] *Motion Picture Patents Co.* case, *supra,* 516.

[11] See, "Emancipation of Patented Articles," Walter H. Chamberlin, 6 Ill. Law Review, 357.

[12] *Bauer & Cie* case, *supra,* 17.

[13] *Id.*