**UNITED STATES of America, Plaintiff,**

v.

**STUDIENGESELLSCHAFT KOHLE, M. B. H., et al., Defendants.**

**Civ. A. No. 1255–70.**

United States District Court, District of Columbia.

Dec. 3, 1976.

---

Kurt Shaffert, Hays Gorey, Jr., and Roger B. Andewelt, U. S. Dept. of Justice, Anti-trust Div., Washington, D. C., for plaintiff.

Johnnie M. Walters, Washington, D. C., Henry V. Nickel, Washington, D. C., Bernard M. Borish, Philadelphia, Pa., Robert A. Fulwiler, Wilmington, Del., Barry E. Cohen, Washington, D. C., Philip S. Neal, Washington, D. C., Arnold Sprung, Burgess, Dinklage & Sprung, New York City, Robert F. Brooks, Hunton & Williams, Richmond, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

The United States of America has sued the Defendants for violation of Sections 1 and 2 of the Sherman Anti-Trust Act. It complains of Defendants' acts arising from a contractual arrangement between the Defendant, Hercules, and a patentee, Karl Ziegler, now deceased and succeeded in interest by the Defendant, Studiengesellschaft Kohle, M. B. H. Defendants contend that the arrangement with Ziegler granting Hercules the exclusive right to sell the unpatentable product made by the patented process is a license agreement protected by the patent laws and therefore immune from attack under the Anti-Trust Laws. For the reasons discussed below, this Court has concluded that Defendants are not entitled to judgment as a matter of law.

Professor Karl Ziegler, Director of the Max Planck Institute for Coal Research in Malheim, West Germany, while engaged in organic-metallic chemical research, developed a number of catalysts and processes for the manufacture of certain plastic, rubbers and other synthetic fibers. These ultimately revolutionized the world's plastic industry and won for Professor Ziegler the Nobel Prize for Chemistry in 1963. One group of organo-aluminum components of the polymerization catalysts used by Ziegler was aluminum trialkyls (ATA's). Among the numerous U. S. patents, Ziegler received, several covered processes for the manufacture of aluminum trialkyls (ATA's).

Hercules Incorporated entered into an agreement with Ziegler on September 24, 1954 (styled "Technical Field Contract") by which Hercules was granted non-exclusive rights to Ziegler's patented processes for the manufacture of polyethylene and certain exclusive rights in his patented process for the manufacture of aluminum trialkyls, namely:

> "An exclusive license to sell in the United States the aluminum trialkyls produced within the scope of the technical field."

No other U. S. manufacturer was granted rights to use Ziegler's patented process to manufacture aluminum trialkyls for sale. Ziegler did grant rights to some to use the process to manufacture aluminum trialkyls for their internal consumption.

Hercules and Defendant, Stauffer Chemical Company, formed a 50–50 joint venture in 1959 to manufacture and sell aluminum trialkyls. That joint venture is the Defendant, Texas Alkyls, Inc. and Hercules transferred to it the rights conferred by Ziegler in the "Technical Field Contract" of 1954. Since that time defendants have successfully prevented the unrestricted sale of aluminum trialkyls made with the patented process.

The Motions for Summary Judgment proceeded upon the single legal premise that the "Technical Field Contract" is in fact a patent license agreement between Ziegler and Hercules and that every activity of which plaintiff complains was taken pursuant to that license and therefore authorized by the patent laws.

The current law governing patent grants, 35 U.S.C. § 154 (1970), provides that:

> "Every patent shall contain a . . . grant to the patentee, his heirs or assigns, for the term of seventeen years, of the right to exclude others from making, using, or selling the invention throughout the United States."

■ The grant is the exclusive right to the patentee to exclude others from making, using or selling the subject matter covered by the claims of the patent. In *Motion Picture Patents v. Universal Film Mfg. Co.,* 243 U.S. 502, 510, 37 S.Ct. 416, 418, 61 L.Ed. 871 (1917), the Supreme Court declared:

> "It has long been settled that the patentee receives nothing from the law which he did not have before, and that the only effect of his patent is to restrain others from manufacturing, using or selling that which he has invented. The patent law simply protects him in the monopoly of that which he has invented and has described in the claims of his patent."

■ A patentee may enforce his statutory right to exclude others from making, using, or selling the subject matter of the patent claim, by bringing an infringement suit against one who infringes the claim (cf. 35 U.S.C. §§ 271(a), 281). He may license others to exercise rights under the patent claim. Such a license is a waiver by the patentee of his statutory right to sue the licensee for infringement of the patent claims.

■ The scope of a patent monopoly is determined by the patent claims. The law requires that these claims be stated distinctly, and with particularity. (35 U.S.C. § 112). The patent as issued by the Patent Office contains the claims which are the sole measure of the patent grant. As stated in *Motion Pictures Patents, supra:*

> "The scope of every patent is limited to the invention described in the claims contained in it, read in the light of the specification. These so mark where the progress claimed by the patent begins and where it ends that they have been aptly likened to the descriptions in a deed which set the bounds to the grant which it contains. It is to the claims of every patent, therefore, that we must turn when we are seeking to determine what the invention is, the exclusive use of which is given to the inventor by the grant provided for by the statute,—He can claim nothing beyond them."

■ The holder of a patent on a product has the monopoly to exclude all others from making, using or selling the product. His patent is infringed where another makes, sells or uses the product. The holder of a patent on a process has the monopoly to exclude all others from making, using or selling the process. Such a patentee has his patent infringed when another makes, sells or uses the process. The product patentee may grant licenses with respect to his product; the process patentee with respect to his process.

Ziegler's patent monopoly is thus defined and limited to the claims in his patent, claims relating solely to the process of producing ATAs, not the product of the use of that process. The patent office had refused his application to patent the ATAs produced by his process because they were not invented by Ziegler and had previously been produced by other means. He subsequently withdrew his product claim. His advancement of science was the process, not the product and for this he received the statutory reward of a patent which gave only him the right to exclude others from using his process for making ATAs. (35 U.S.C. § 101).

The license agreement at issue in this case is one in which Professor Ziegler granted to Defendant, Hercules, certain rights under Ziegler's patented processes for the manufacture of ATAs. The relevant portion of the agreement reads as follows:

> ". . . Professor Ziegler hereby grants to Hercules . . . a non-exclusive license in the United States and Canada under the Patent Applications and under the Patents and each and every claim thereof, to use the processes therein described and claimed or resulting from the practice of said processes. Prof. Ziegler further grants to Hercules *an exclusive license to sell in the United States the aluminum trialkyl produced within the scope of the technical field.*"

The exclusive grant to Hercules was the exclusive right to *sell* the ATAs produced pursuant to his patented process.

It is this grant of an *exclusive right to sell* the unpatentable product of the patent process which is the heart of this litigation. The critical inquiry in deciding this Motion is whether this grant represents no more than an exercise of the patent monopoly conferred by law or whether the grant extends the patent monopoly.

Judicial approval has been given to a wide-range of licensing options that a patentee may utilize in excluding others from "making, using or selling" the subject of his patent claim. He may issue a license for a limited period of time, *Pursche v. Atlas Scraper and Engineering Co.,* 300 F.2d 467 (9th Cir. 1961), *cert. denied,* 371 U.S. 911, 957, 83 S.Ct. 251, 9 L.Ed.2d 170 (1963); he may grant a license with territorial limitations, *Gayler v. Wilder,* 51 U.S. (10 How.) 477, 13 L.Ed. 504 (1850); he may grant a license to make and use but not to sell the subject of his patent, *Mitchell v. Hawley,* 83 U.S. (16 Wall.) 544, 21 L.Ed. 322 (1872); or to exercise only one of his rights to make use and sell his invention, *Adams v. Burke,* 84 U.S. (17 Wall.) 453, 456, 21 L.Ed. 700 (1873); *E. W. Bliss Co. v. United States,* 253 U.S. 187, 40 S.Ct. 455, 64 L.Ed. 852 (1920). In short, the patentee may divide and parcel out certain portions of his patent monopoly. Such licensing restrictions have come to be known as "field-of-use" licenses.

The principal rationale of Defendants' argument is that the Ziegler license to Hercules of an exclusive right to sell the product of the patented process is a "field-of-use" restriction.[1] They contend that the "field-of-use" is the commercial sales market for ATAs produced by the use of the Ziegler process. Defendants state as follows:

"The ATA rights granted to Hercules may be considered a field-of-use license if Ziegler is viewed as having granted to Hercules the exclusive right to use his patented aluminum trialkyl processes to manufacture ATAs for the resale field, and correlatively limited his other licenses to the use of his ATA processes to manufacture for the purpose of internal consumption."[2]

In support of their position, Defendants rely heavily upon *General Talking Pictures Corp. v. Western Electric Co.,* 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273, aff'd on rehearing, 305 U.S. 124, 59 S.Ct. 116, 83 L.Ed. 81 (1938) (hereafter called "G.T.P."). That case concerned field-of-use licenses under patents relating to a vacuum tube amplifier. Amplifiers containing the patented invention could be incorporated in commercial sound recording and reproducing equipment used by motion picture exhibitors, as well as in radio reception equipment used privately and non-commercially. The patent holder licensed two companies to incorporate the invention for use in commercial equipment; it licensed the defendant, American Transformer Company, and approximately fifty other manufacturers to incorporate the invention in equipment intended to be used privately and non-commercially. 305 U.S. at 125–26, 59 S.Ct. 116. American Transformers' attempt to manufacture the amplifiers for commercial use was thwarted twice by the Supreme Court by its observations that:

"The Transformer Company was not an assignee; it did not own the patents or any interest in them; it was a mere licensee under a non-exclusive license, amounting to no more than a 'mere waiv-

---

1. Defendants also argue in their briefs that the Ziegler licensing arrangement can be considered lawful under the patent and anti-trust laws if viewed as a quantity limitation upon some of the licenses. However, this Court does not believe that a quantity limitation can or should be read into these licensing agreements. This is not a case where quantity limits have been placed upon the use of the patented process. Whatever limits Ziegler attempted to impose were limitations upon the use of the ultimate unpatented product. Thus cases such as *Q-Tips, Inc. v. Johnson & Johnson,* 109 F.Supp.

657 (D.N.J.1951), aff'd 207 F.2d 509 (3d Cir. 1953), *cert. denied,* 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086 (1954) and *United States v. E. I. DuPont de. Nemours & Co.,* 118 F.Supp. 41 (D.Del.1953), aff'd on other grounds, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264 (1956) are inapposite to the matter at hand.

2. Memorandum of points and authorities in Support of Motion of Defendants Hercules, Inc., Stauffer Chemical Co. & Texas Alkyls, Inc. for Summary Judgment, page 16.

er of the right to sue.' . . . Patent owners may grant licenses extending to all use or limited to use in a defined field. . . . Unquestionably, the owner of a patent may grant licenses to manufacture, use or sell upon conditions not inconsistent with the scope of the monopoly. . . . There is here no attempt on the part of the patent owner to extend the scope of the monopoly beyond that contemplated by the patent statute." 304 U.S. at 181, 58 S.Ct. at 852 [Citations omitted].

and its further statement on rehearing that:

"The question of law requiring decision is whether the restriction is to be given effect. That a restrictive license is legal seems clear. As was said in *United States v. General Electric Co.*, 272 U.S. 476, 489, 47 S.Ct. 192, 71 L.Ed. 362, the patentee may grant a license upon any condition the performance of which is reasonably within the reward which the patentee by the grant of the patent is entitled to secure. . . . The practice of granting licenses for a restricted use if an old one . . .. So far as appears, its legality has never been questioned." "As the restriction was legal and the amplifiers were made and sold outside the scope of the license the effect is precisely the same as if no license whatsoever had been granted to Transformer Company." 305 U.S. at 127, 59 S.Ct. at 117.

The patentee in *G.T.P.* defined two separate and distinct fields-of-use for its patents; the commercial motion picture field, and the other, the private, non-commercial radio reception field. The patentee could have excluded others from making, using or selling the amplifiers in any field. Thus, its decision to apportion its patent monopoly was within the scope of that monopoly and was approved by the Supreme Court.

■ Defendants also place reliance upon the case of *United States v. Ciba-Geigy Corp.*, 1976 Trade Case ¶ 60,908. That case is exactly on point for the proposition that the starting place for an analysis of a pat-

ent license is the patent law of monopoly not the anti-trust laws of anti-monopoly and restraint of trade, as the Court stated:

"Any limitation contained in a patent license, by definition, results in a restraint in trade. The restraint inheres in the grant of the patent itself which by its terms conveys the power to exclude. Therefore, it seems fruitless to attempt to judge the legality of a particular limitation contained in a license in terms of the competition it prevents from coming into existence. Rather, the legality of a limitation or series of limitations can only be judged with reference to the scope of the monopoly created by the latters patent." 1976 Trade Case at ¶ 68,961.

In its analysis of the scope of Ciba's patent, the Court concluded that since Ciba had the unquestioned right to exclude all from the manufacture of its patented drug, it had the right to license another by limiting it to certain types of manufacture. It was a legitimate field-of-use restriction on the manufacture of its patented drug. Ciba's patent was on the drug manufactured, not the process. Its patent extended to the new drug product resulting from the formula it had invented. It could therefore apportion this manufacture as it chose or prohibit it entirely.

■ In considering the legality of restrictive licensing agreements from *Rubber Co. v. Goodyear*, 76 U.S. (9 Wall.) 788, 19 L.Ed. 566 (1869) to *United States v. Ciba-Geigy Corp.*, 1976 Trade Case ¶ 60,908, the starting place for every judicial analysis has been a determination of the scope of the monopoly created by the patent involved. Thus it is fundamental in considering the Ziegler-Hercules license agreement to emphasize and distinguish that Ziegler's patent claim involved a process and not a product patent. This difference is real and is dispositive of Defendants' reliance by analogy on product patent cases. Ziegler did not have the right to exclude others from making, using or selling ATA whether or not made from the use of patented process. His patent claim gave him the right to

exclude others from making, using or selling his process. He therefore never had protection under the Patent Laws when he sought by whatever means to extend his process claim to restrict use or distribution of the unpatented product, the ATAs.[3]

The only case involving a process patent which Defendants are able to cite is *Ethyl Corporation v. Hercules Powder Co.,* 232 F.Supp. 453 (D.Del.1964), in which in a different factual setting the Delaware Court considered the same licensing agreement in issue here. This Court is in complete accord with the finding of the Court in *Ethyl Corp.* in its initial opinion that:

> . . . [B]y granting a license which purports to give an exclusive right to sell an unpatented article, Dr. Ziegler has overstepped his rights under the patent law. He can restrict the use of his process, but he cannot place controls on the sale of unpatented articles produced by the process.
>
> Dr. Ziegler does not have and has never had the right to exclude others from selling aluminum trialkyls. He could not convey such a right to Hercules. His attempt to do so in the license agreement of 1954 is an invalid attempt to extend the monopoly granted to him with regard to the Ziegler process under the United States patent law. (*Id.* at 457).

The analysis which the Delaware Court followed in reaching that determination is the same analysis which this Court has pursued here. However, this Court cannot accept the Delaware Court's conclusion in its supplemental opinion that nevertheless Ziegler's contract with Hercules constitutes a valid grant of Ziegler's patent rights. The Delaware Court based that conclusion upon a belief that "although Ziegler could not effectively grant Hercules an exclusive right to sell the unpatented product, he could grant the exclusive right to use his process for the purpose of manufacturing aluminum trialkyls for sale." *Id.* at 460.

If Ziegler had given Hercules the exclusive right to use his patented process, then and only then would Hercules have the right because of the patent monopoly to exclude others from using the Ziegler process to make ATAs for commercial sale. But Ziegler did not do that. Hercules' grant to use the process is non-exclusive. Hercules' rights under Ziegler's patent monopoly do not embrace control over the ultimate product, and no construction of the concept of process use can convert a process patent into a product patent. To the extent that the Delaware Court's opinion in *Ethyl Corp.* holds that Hercules has an exclusive right under the licensing agreement to sell ATAs manufactured through use of the Ziegler process and that the granting of such a right is the result of the legitimate manipulation of the Ziegler patent monopoly, this Court respectfully declines to follow that opinion.

Lacking the protection of the Patent Laws subjects the Ziegler licenses to the scrutiny of the general law, including but not limited to the Sherman Act. *Motion Picture Patents Co. v. Universal Film Mfg. Co., supra.* Whether Ziegler-Hercules license agreement can otherwise withstand the Government's assault cannot here be determined. What can be and is hereby determined is that Defendants are not entitled to a Summary Judgment and therefore:

It is by the Court this 3rd day of December, 1976,

ORDERED, that Defendants' Motions are DENIED.

---

**3.** Through certain restrictions on the use of his process, of course, the holder of a process patent may exert control over the end product. He could, for example, refuse to allow the use of his process at all and thus keep the product produced by that process off the market. *Ethyl Corporation v. Hercules Powder Co.,* 232 F.Supp. at 457. The holder of a process patent could also decide to license only one company to use the process. That company would then have exclusive rights in regard to initial use or distribution of the product manufactured by that process. The holder of a process patent could not, however, license several companies to use the process and attempt to limit the manner in which some of those companies decide to use the ultimate product.