# United States Court of Appeals for the Federal Circuit

---

**MACOM TECHNOLOGY SOLUTIONS HOLDINGS, INC., NITRONEX, LLC,**
*Plaintiffs-Appellees*

**v.**

**INFINEON TECHNOLOGIES AG,**
*Defendant*

**INFINEON TECHNOLOGIES AMERICAS CORPORATION,**
*Defendant-Appellant*

---

2017-1448

---

Appeal from the United States District Court for the Central District of California in No. 2:16-cv-02859-CAS-PLA, Judge Christina A. Snyder.

---

Decided: January 29, 2018

---

AMANDA TESSAR, Perkins Coie, LLP, Denver, CO, argued for plaintiffs-appellees. Also represented by ELIZABETH M. BANZHOFF; DAN L. BAGATELL, Hanover, NH; DANIEL TYLER KEESE, Portland, OR.

DAVID G. WILLE, Baker Botts, LLP, Dallas, TX, argued for defendant-appellant. Also represented by JEFFERY D. BAXTER, BRIAN DOUGLAS JOHNSTON.

---

Before PROST, *Chief Judge,* WALLACH and STOLL,
*Circuit Judges.*

PROST, *Chief Judge.*

Plaintiffs MACOM Technology Solutions Holdings, Inc. and Nitronex, LLC (together, "MACOM") sought and obtained a preliminary injunction against defendant Infineon Technologies Americas Corp. ("Infineon") in the U.S. District Court for the Central District of California. The injunction declared that Infineon's termination of an agreement was ineffective and ordered Infineon to comply with that agreement. Infineon appeals the injunction on several grounds. We affirm in part, vacate in part, and remand for further proceedings.

## BACKGROUND

Nitronex Corporation ("Nitronex") was formed in 1999 and developed semiconductors using gallium nitride ("GaN"). Nitronex obtained several patents related to that technology. In 2010, it sold its GaN patents to International Rectifier Corporation ("IR"). As part of the sale, Nitronex and IR executed a separate license agreement (the "Agreement"), which licensed back to Nitronex certain rights under the patents. Both companies were later acquired and renamed. For present purposes, the relevant parties to the Agreement are MACOM (formerly Nitronex) and Infineon (formerly IR).

The Agreement defines a "Field of Use" characterized by GaN-on-silicon ("GaN-on-Si") technology and licenses MACOM to practice what are now Infineon's GaN patents (the "Licensed Patents") within the "Field of Use only." MACOM and Infineon share rights to practice the Li-

censed Patents in the Agreement's Field of Use. But the Agreement further defines an "Exclusive Field" within the Field of Use in which MACOM has certain exclusive rights to practice the Licensed Patents—even as against Infineon.

In February 2016, Infineon notified MACOM that it believed MACOM had breached the Agreement by making and selling products using GaN-on-silicon-*carbide* ("GaN-on-SiC") technology, which is distinct from GaN-on-Si technology and outside the Agreement's Field of Use.[1] MACOM responded that the GaN-on-SiC sales were minimal and that any breach had been cured. Nevertheless, Infineon terminated the Agreement on March 22, 2016, because it deemed MACOM's GaN-on-SiC activity to be a material breach.

MACOM then sued Infineon, asserting various contract claims and a claim for declaratory judgment of non-infringement of the Licensed Patents. MACOM also moved for a preliminary injunction based on its third claim for relief—a declaratory judgment that the Agreement was wrongly terminated and remains in effect (the "Wrongful Termination claim").

The district court held a hearing and issued an opinion and order granting a preliminary injunction. The district court's December 7, 2016 injunction (the "Injunction") states:

> The Court hereby **GRANTS** [MACOM's] Motion for Preliminary Injunction. The Court **ORDERS** that until further order of the Court, the [Agreement] shall remain in full force and ef-

---

[1] For purposes of these proceedings, MACOM does not dispute that its GaN-on-SiC activity infringed at least one claim of the Licensed Patents.

fect and that defendant [Infineon's] purported termination of that agreement on March 22, 2016 shall have no effect.

In the event that [Infineon] asserts that there is a new breach of the [Agreement] by plaintiffs, [Infineon] shall advise the Court in writing of its intention to declare a breach, stating the action it intends to take and the claimed basis for that action. [Infineon] shall provide the Court with such notice 30 days before declaring a breach.

Consistent with existence of a valid License Agreement, [Infineon] may not design, develop, make, have made, use, offer to sell, sell, or service products in MACOM's Exclusive Field (as defined by the under-seal [Agreement]) that practice the [Licensed Patents], nor may [Infineon] directly or indirectly market, sell, or service products in the Exclusive Field that practice the [Licensed Patents]. In addition, [Infineon] may not grant licenses or sublicenses to the Licensed Patents (identified in Schedule A to the [Agreement]) to design, develop, make, have made, use, market, sell or service products in the Exclusive Field or Field of Use (as defined by the [Agreement]) that practice the [Licensed Patents], including but not limited to the grant of such licenses to its corporate affiliates. Nothing in this order shall prevent [Infineon] from designing, making, having made, using, offering to sell, selling, or servicing gallium nitride-on-silicon carbide (GaN-on-SiC) products, or from directly or indirectly marketing, selling, or servicing such products.

Infineon shall, within ten days from the date of issuance of this Preliminary Injunction, provide notice and a copy of this Preliminary Injunction to all subsidiaries, affiliates, officers, directors, em-

ployees, principals, agents, customers, and attorneys that may have any involvement whatsoever in designing, developing, making, having made, using, marketing, selling, servicing, or licensing products in the Exclusive Field or Field of Use that use the [Licensed Patents], as well as any other person or entity acting in active concert or participation with [Infineon] with respect to any of the activities enjoined here.

J.A. 50–52.

Infineon appeals the district court's order granting the Injunction. We have subject-matter jurisdiction under 28 U.S.C. §§ 1292(a) and (c)(1).

## DISCUSSION

Because the grant, denial, or modification of a preliminary injunction is not unique to patent law, we apply regional circuit law when reviewing and interpreting such decisions. *E.g.*, *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013). The Ninth Circuit reviews a district court's decision granting a preliminary injunction for abuse of discretion. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). A district court abuses its discretion by basing its decision on an erroneous legal standard or clearly erroneous findings of fact. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

In the Ninth Circuit, a party may obtain a preliminary injunction by showing that (1) it is "likely to succeed on the merits," (2) it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) the "balance of equities tips in [its] favor," and (4) "an injunction is in the public interest." *Disney*, 869 F.3d at 856 (alteration in original) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Additionally, this court "has itself built a body of precedent applying these general consider-

ations to a large number of factually variant patent cases, and we give dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed. Cir. 1998).

Infineon challenges the Injunction on several grounds. First, Infineon argues that the district court erred in finding that MACOM showed a likelihood of success on its Wrongful Termination claim. Second, Infineon argues that the district court erred in finding that MACOM showed irreparable harm. Finally, Infineon challenges the content of the Injunction. We address these arguments in turn.

I

Infineon argues that MACOM's Wrongful Termination claim is not likely to succeed on the merits because Infineon's termination of the Agreement was not wrongful. Specifically, Infineon argues that MACOM's GaN-on-SiC activity outside the licensed Field of Use materially breached the Agreement's implied covenant of good faith and fair dealing, justifying the Agreement's termination.[2] The district court disagreed. It found that MACOM could likely establish that its activity outside the Agreement's licensed Field of Use did *not* breach the Agreement's implied covenant of good faith and fair dealing—and that, therefore, Infineon was not entitled to the breach remedy of termination. Accordingly, the district court found that MACOM showed a likelihood of success on its Wrongful

---

[2]   Section 7.1 of the Agreement allows either party to terminate the Agreement if the other party "materially breaches its obligations [t]hereunder" and fails to cure after receiving written notice of the alleged breach.

Termination claim.  We conclude that the district court did not err in this finding.

The parties agree that the Agreement is governed by California law, which implies a covenant of good faith and fair dealing in every contract.  *E.g.*, *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683–84 (1988).  The covenant of good faith and fair dealing "is read into contracts in order to protect the express covenants or promises of the contract."  *Id.* at 690.  But it "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms" of the contract.  *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349–50 (2000); *see Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007) (observing that the "implied covenant will not apply where no express term exists on which to hinge an implied duty"); *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990) (noting that, absent an express and effective contractual right, the implied covenant "has nothing upon which to act").

We review this question of contract interpretation without deference.  *See Tex. Instruments Inc. v. Tessera, Inc.*, 231 F.3d 1325, 1329 (Fed. Cir. 2000) (citing *Plaza Freeway Ltd. P'ship v. First Mountain Bank*, 81 Cal. App. 4th 616, 621 (2000)).

The Agreement's relevant provision states:

[Infineon] hereby grants to [MACOM] the following: a) a worldwide, royalty-free, fully paid exclusive license *in the Field of Use only*, with right to sublicense in the Field of Use only, to use the Licensed Patents to design, develop, make, have made, use, offer to sell, sell and service Products . . . .

J.A. 438 § 2.1 (emphasis added).

This language conveys a patent license to MACOM, which is "in essence nothing more than a promise by the

licensor not to sue the licensee." *Spindelfabrik Suessen-Schurr, Stahlecker & Grill GmbH v. Schubert & Salzer Maschinenfabrik Aktiengesellschaft*, 829 F.2d 1075, 1081 (Fed. Cir. 1987). Aside from this promise not to sue, the quoted contractual language suggests no additional promise by (or obligation of) MACOM *not* to exceed the Field of Use on which we may "hinge an implied duty," *Berger*, 476 F. Supp. 2d at 1177.

Infineon nevertheless argues that this particular license suggests such a promise or obligation, because it is limited to the "Field of Use *only*." Infineon asks too much of the word "only." We do not read that word, alone, to supplement Infineon's mere promise not to sue with a contractual obligation of MACOM.

Infineon further argues that, because the Agreement was part of a larger transaction under which the Licensed Patents were purchased from Nitronex (i.e., MACOM's predecessor), it "makes no sense that [Infineon] would have purchased those patent rights and granted Nitronex a license to a *subset* of those rights, if Nitronex [were] free to operate in violation of the remainder of the rights that [Infineon] had just purchased." Infineon's Reply Br. 4. But we do not suggest that MACOM is free to operate outside the Field of Use. After all, Infineon's ownership of the Licensed Patents gives it a right to exclude. 35 U.S.C. § 154(a)(1); *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1370 (Fed. Cir. 2017) ("A patent gives nothing but the right to exclude, which in our system generally means a right to call on the courts."). Infineon may seek to vindicate that right under the patent laws for activity outside the licensed Field of Use. *See Gen. Talking Pictures Corp. v. W. Elec. Co.*, 305 U.S. 124, 126 (1938) ("Any use beyond the valid terms of a license is, of course, an infringement of a patent.").

Other facts and circumstances may give rise to an implied covenant not to practice outside a licensed field of

use.[3]  We need not decide those issues today.  We hold
only that, on the record before it, the district court did not
err in finding that MACOM could likely establish that its
activity outside the Agreement's licensed Field of Use did
not breach the Agreement's implied covenant of good faith
and fair dealing.  The district court therefore did not err
in finding that MACOM showed a likelihood of success on
the merits of its Wrongful Termination claim.

## II

The district court also found that MACOM was likely
to suffer irreparable harm in the absence of a preliminary
injunction.  In so finding, the court relied in part on
evidence that MACOM was being harmed by Infineon's
marketing of GaN-on-Si base-station products in
MACOM's Exclusive Field.  Infineon notes that MACOM
did not show that the marketing was wrongful under the
Agreement, because MACOM never showed that any of
the allegedly marketed products practices any of the
Licensed Patents.  In other words, these marketed prod-
ucts might have been non-infringing design-arounds, free
from the Agreement's restrictions.  Thus, Infineon argues
that the district court erred in concluding that MACOM
would suffer irreparable harm absent an injunction,
because there was no "causal nexus" between the Agree-
ment's termination and Infineon's (presumably lawful)
marketing.

---

[3]  While we acknowledge Infineon's argument that
the implied covenant of good faith and fair dealing al-
ready exists in the Agreement under California law and
need not be "creat[ed]," Infineon's Br. 40–41, the relevant
inquiry remains: whether that implied covenant forbids,
as a matter of contract, practicing outside the Field of Use
in this Agreement.

Infineon is correct that, to satisfy the irreparable-harm requirement, there must be a causal nexus between conduct shown to be wrongful and the alleged harm. This requirement "ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015); *see Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1072 (9th Cir. 2014) (affirming district court's finding of no irreparable harm because the harms resulted from the accused program as a whole, rather than "flow[ing] from" the only copies shown likely to infringe); *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1361 (Fed. Cir. 2013) (in a patent-infringement case, observing that "the causal nexus requirement is simply a way of distinguishing between irreparable harm caused by patent infringement and irreparable harm caused by otherwise lawful competition").

But the district court did not rely *only* on Infineon's marketing in finding irreparable harm. The district court also observed that MACOM would lose its exclusive license to practice the Licensed Patents in the Exclusive Field if the Agreement's termination were effective. J.A. 140. MACOM submitted a declaration from one of its senior employees who testified that MACOM's exclusive rights have been a "significant contributor" to certain base-station companies' willingness to consider MACOM's base-station products. J.A. 509 ¶¶ 1–2; J.A. 520 ¶ 37. This employee also testified that it would be difficult for MACOM, as a new entrant in the base-station market, to compete with incumbent Infineon for the business of these very few, "highly risk-averse" base-station companies without a unique value proposition—namely, the exclusivity that the Agreement provides. J.A. 518 ¶ 26; J.A. 520–21 ¶ 38. The district court considered this employee's testimony, J.A. 140, and ultimately agreed that MACOM would "suffer harm merely by virtue of [its] customers'

perception that [it] no longer hold[s] an exclusive . . . license," J.A. 143. The court found that "[s]uch harm will occur *even if* [Infineon] is not practicing a patent within [MACOM's] exclusive use." *Id.* (emphasis added). The district court's findings in this regard are not clearly erroneous. And we conclude that a sufficient causal nexus exists between Infineon's termination of the Agreement and this harm to MACOM that the district court identified.

Our review of preliminary-injunction appeals is "limited and deferential." *Fox Broad.*, 747 F.3d at 1073 (quoting *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc)). Given the district court's findings, we are satisfied that it did not abuse its discretion in concluding that MACOM would suffer irreparable harm in the absence of a preliminary injunction.

## III

Infineon lastly challenges the content of the Injunction. In particular, Infineon argues that the Injunction's third and fourth paragraphs (1) improperly order specific performance of provisions of the Agreement, because MACOM did not show that Infineon breached or was likely to breach those provisions; (2) incorporate an erroneous interpretation of the Agreement; and (3) violate Federal Rule of Civil Procedure 65(d) by "fail[ing] to provide reasonable notice of the specific conduct it prohibits."

The Injunction's third paragraph states:

> **[1]** Consistent with existence of a valid License Agreement, [Infineon] may not design, develop, make, have made, use, offer to sell, sell, or service products in MACOM's Exclusive Field (as defined by the under-seal [Agreement]) that practice the [Licensed Patents], nor may [Infineon] di-

rectly or indirectly market, sell, or service prod-
ucts in the Exclusive Field that practice the [Li-
censed Patents]. **[2]** In addition, [Infineon] may
not grant licenses or sublicenses to the Licensed
Patents (identified in Schedule A to the [Agree-
ment]) to design, develop, make, have made, use,
market, sell or service products in the Exclusive
Field or Field of Use (as defined by the [Agree-
ment]) that practice the [Licensed Patents], in-
cluding but not limited to the grant of such
licenses to its corporate affiliates. **[3]** Nothing in
this order shall prevent [Infineon] from designing,
making, having made, using, offering to sell, sell-
ing, or servicing gallium nitride-on-silicon carbide
(GaN-on-SiC) products, or from directly or indi-
rectly marketing, selling, or servicing such prod-
ucts.

J.A. 51 (numbers added for clarity). This paragraph
contains three sentences, each with different import. The
first sentence enjoins Infineon from undertaking certain
activities concerning products in the Exclusive Field "that
practice the [Licensed Patents]." The second sentence
enjoins Infineon from granting particular licenses or
sublicenses to the Licensed Patents. The third sentence
clarifies that the Injunction does not prohibit Infineon
from undertaking certain activities concerning GaN-on-
SiC products.

We vacate the first sentence because it lacks the
specificity that Rule 65(d) requires. Rule 65(d) mandates
that every order granting an injunction must "state the
reasons why it issued," "state its terms specifically," and
"describe in reasonable detail—and not by referring to the
complaint or other document—the act or acts restrained
or required." Fed. R. Civ. P. 65(d)(1). We review an
injunction's compliance with Rule 65(d) de novo. *Int'l
Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1315–16

(Fed. Cir. 2004); *Premier Commc'ns Network, Inc. v. Fuentes*, 880 F.2d 1096, 1100 (9th Cir. 1989).

We have held that injunctions simply prohibiting future infringement of a patent do not meet the specificity requirements of Rule 65(d). *Int'l Rectifier*, 383 F.3d at 1316 (citing *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 986 F.2d 476 (Fed. Cir. 1993)). Rather, to comply with Rule 65(d) the enjoined acts must relate to particular, adjudicated infringing products. *Id.* ("[T]he only acts the injunction may prohibit are infringement of the patent by the adjudicated devices and infringement by devices not more than colorably different from the adjudicated devices. In order to comply with Rule 65(d), the injunction should explicitly proscribe only those specific acts."). Requiring such specificity "protects enjoined parties from unwarranted contempt proceedings." *Id.* at 1317 (citing *Additive Controls*, 986 F.2d at 480).

The third paragraph's first sentence enjoins Infineon from, among other activities, designing, developing, making, using, marketing, selling, and offering to sell products in the Exclusive Field "that practice the [Licensed Patents]." This is, in essence, an injunction prohibiting infringing acts—but without reference to any particular, adjudicated infringing product.[4] Indeed, no product has yet been adjudicated.

MACOM argues that we should treat this injunction differently because it arises from a contractual claim, as opposed to a patent-infringement claim. MACOM's Br. 58. But this is a distinction without a difference. Wheth-

---

[4] That "design," "develop," and "market" are not among the acts that 35 U.S.C. § 271 lists as infringing does not affect our conclusion regarding the Injunction's compliance with Rule 65(d).

er this injunction derives its force from the patents themselves or a contract referencing the patents, it prohibits the same conduct in the same manner as injunctions we have held violated Rule 65(d). Routing the prohibited conduct through a contract does not improve the Injunction's specificity. We therefore vacate the third paragraph's first sentence because it fails to meet the specificity requirements of Rule 65(d) as a matter of law.

The third paragraph's second sentence enjoins Infineon from granting particular licenses or sublicenses to the Licensed Patents. We do not believe—and Infineon does not argue—that this sentence raises the same Rule 65(d) specificity concerns as the first sentence. But we do agree with Infineon that the second sentence improperly orders specific performance of a contractual provision absent any showing of breach of that provision.

"To enjoin the breach of a contract is, in effect, to decree its specific performance, and the principles applicable to the two remedies are the same." *Ariz. Edison Co. v. S. Sierras Power Co.*, 17 F.2d 739, 740 (9th Cir. 1927); *see Vasquez v. Rackauckas*, 734 F.3d 1025, 1040 (9th Cir. 2013) (observing that specific performance of a contract "is, essentially, an injunction"). And "specific performance is a *remedy* for breach of contract, a cause of action which requires proof the contract was breached." *Golden W. Baseball Co. v. City of Anaheim*, 25 Cal. App. 4th 11, 49 (1994); *see id.* at 49 n.43 (finding a lack of authority for ordering specific performance in the absence of a breach or anticipatory breach).[5]

---

[5] Although MACOM argues on appeal (in a footnote) that Infineon's termination of the Agreement was *itself* a repudiation amounting to an anticipatory breach, MACOM's Br. 45 n.9, MACOM did not raise this argu-

Unlike the first sentence, where MACOM at least offered some evidence and argument suggesting a possible breach or threatened breach from Infineon's marketing of GaN-on-Si products in the Exclusive Field,[6] we see no evidence or argument suggesting that Infineon breached or threatened to breach the Agreement by granting licenses or sub-licenses to the Licensed Patents in the Exclusive Field. Under these circumstances, we find that the district court abused its discretion in ordering the specific performance set forth in the third paragraph's second sentence.

The third paragraph's third sentence merely clarifies what the Injunction does *not* prohibit—namely, Infineon's activities concerning GaN-on-SiC products. None of Infineon's arguments for vacating the third paragraph applies to this sentence. This is perhaps unsurprising, considering it was Infineon who wanted this sentence added in the first place. J.A. 1092. Although the third sentence may be less necessary now in light of our vacating the third paragraph's first and second sentences, we

---

ment in its preliminary-injunction motion and the district court's opinion did not address this issue. *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.").

[6] MACOM's Br. 46 ("Infineon clearly *threatened* to [breach] by announcing plans to enter the GaN-on-Si basestation market."); *id.* (MACOM arguing that, aside from practicing the Licensed Patents, "there is no other commercially-feasible way to design, manufacture, market, and sell GaN-on-Si RF [i.e., radio frequency] products"); *see* J.A. 140–43 (district court's findings regarding Infineon's marketing of GaN-on-Si RF products).

see no abuse of discretion in the district court's incorporating this clarifying third sentence into the Injunction.

Finally, Infineon asks that we vacate the Injunction's fourth paragraph, which states:

> Infineon shall, within ten days from the date of issuance of this Preliminary Injunction, provide notice and a copy of this Preliminary Injunction to all subsidiaries, affiliates, officers, directors, employees, principals, agents, customers, and attorneys that may have any involvement whatsoever in designing, developing, making, having made, using, marketing, selling, servicing, or licensing products in the Exclusive Field or Field of Use that use the [Licensed Patents], as well as any other person or entity acting in active concert or participation with [Infineon] with respect to any of the activities enjoined here.

J.A. 51–52. This paragraph concerns the notice of the Injunction that Infineon must provide to other persons or entities. Infineon lumps the fourth paragraph in with its third-paragraph arguments (i.e., Rule 65(d) and specific performance), but it does not explain how or why those same arguments apply to the fourth paragraph's notice provisions. For example, Infineon does not explain how Rule 65(d) renders these notice provisions defective,[7] or

---

[7] When pressed at oral argument, Infineon failed to articulate how the fourth paragraph's notice provisions implicate its Rule 65(d) specificity concerns. *See* Oral Argument at 10:39–11:53, *MACOM Tech. Solutions Holdings, Inc. v. Infineon Techs. AG* (No. 2017-1448), http://www.cafc.uscourts.gov/oral-argument-recordings (Infineon's counsel conceding that "the [Rule] 65(d) challenge focuses on paragraph three").

how having to give notice of the Injunction is an improper order of specific performance of the Agreement. We find Infineon's argument undeveloped and insufficient to show that the fourth paragraph was improperly entered. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006).

### CONCLUSION

We affirm the entry of the Injunction but vacate the first and second sentences of the Injunction's third paragraph. Although we leave the third paragraph's third sentence in place, we leave it to the district court on remand to consider whether that sentence remains necessary in light of our decision today.

## AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED

### COSTS

The parties shall bear their own costs.