**CHEMAGRO CORPORATION, a New York Corporation, Plaintiff,**

v.

**UNIVERSAL CHEMICAL COMPANY, a Texas Corporation, and the Ferti-Lome People, an Unincorporated Association, jointly and severally, Defendants.**

**Civ. A. No. 391.**

United States District Court
E. D. Texas,
Paris Division.
July 23, 1965.

George T. Mobille, Cushman, Darby &
Cushman, Washington, D. C., Jack W.
Flock, Tyler, Tex., Charles H. Gullett,
Denison, Tex., for plaintiff.

Cecil L. Wood, Dallas, Tex., Buster
Cole, Bonham, Tex., for defendants.

SHEEHY, Chief Judge.

This matter having been fully tried before the Court and a jury, and the Court having read the pleadings filed herein by the respective parties, and the Court and jury having heard and examined all the testimony, documents, and exhibits presented by the respective parties and admitted into evidence, and the jury having returned a special verdict on the issues of actual notice and acquiescence submitted to them by the Court in the form of two special interrogatories, and the Court being fully advised, the Court hereby enters its findings of fact and conclusions of law as follows:

## FINDINGS OF FACT

1. This is an action brought by Chemagro Corporation, having its principal office and place of business in Kansas City, Missouri, against Universal Chemical Company and The Ferti-Lome People, both having their principal office and place of business in Bonham, Texas, for patent infringement of claim 10 of United States Patent No. 2,759,010, issued August 14, 1956, on Patent Application Serial No. 370,882, filed July 28, 1953. The defendants denied patent infringement and also alleged as an affirmative defense that, in the event they had infringed claim 10 of the aforesaid patent, plaintiff, through its conduct prior to instituting this action, had acquiesced thereto.

2. Plaintiff had brought a related action for unfair competition but before trial thereof it was dismissed pursuant to stipulation by all of the parties.

3. Defendant had brought a counterclaim for unfair competition but after trial of plaintiff's patent infringement action, and before trial of said counterclaim, the latter was dismissed with prejudice pursuant to stipulation by all of the parties.

4. United States Patent No. 2,759,010 was duly and lawfully issued to Farbenfabriken Bayer Aktiengesellschaft on August 14, 1956, as assignee of the entire right, title and interest in said patent, and since that date said assignee has been and still is the owner of the entire right, title and interest in and to said patent.

5. Plaintiff is a New York corporation that manufactures and sells agricultural chemicals including insecticides. It is the sole and exclusive licensee under said patent, said license comprising an instrument in writing, duly executed on the first day of November, 1955, and said license specifically bestows upon plaintiff the right to institute in its own name and to prosecute suit for patent infringement under Patent No. 2,759,010, and to sue and recover for past infringement thereof.

6. Defendant, Universal Chemical Company, is a Texas corporation, being incorporated on October 4, 1950, under the name Hi-Yield Fertilizer Company, and changing its name to Universal Chemical Company on November 1, 1963, by amendment to articles of incorporation. It manufactures and sells agricultural and home garden products.

7. Defendant, The Ferti-Lome People, is an unincorporated association, whose members consist of various dealers and distributors of products, including those of Universal, and used in home gardens.

8. H. Dean Smith has been, since their inception, the chief executive officer of both defendants, having general over-all supervision thereof.

9. Claim 10 of the patent in suit covers a systemic insecticide having the chemical name 0,0 diethyl S-2 (ethylthio) ethyl phosphorodithioate, and distributed by plaintiff under the trademark DI-SYSTON.

10. Defendants have admitted that the patented DI-SYSTON meets all of the standards of invention required to establish the validity of the patent in suit.

11. Plaintiff's patented insecticide, DI-SYSTON, is capable of presenting toxicity hazards varying in proportion to the concentrations thereof and plaintiff is obligated under its exclusive license to distribute such insecticide for use commensurate with the relative toxicity

of the patented DI-SYSTON product being distributed.

12. Plaintiff manufactures and distributes DI-SYSTON in different formulations including clay granules impregnated to concentrations of 10% and 2% DI-SYSTON, such manufacture and distribution having met with significant commercial success.

13. Plaintiff distributes the aforesaid 10% DI-SYSTON granules under a limited patent license prohibiting the reformulation and sale thereof for use by the home gardener, such 10% DI-SYSTON granules being specifically intended, due to their high concentration, for use by the skilled commercial grower. Said limited patent license appears as a written label notice on containers in which 10% DI-SYSTON granules are distributed.

14. Defendants have purchased 10% DI-SYSTON granules packaged in containers bearing said limited patent license notice, and have reformulated same in the manufacture of a rose food product distributed under the name "Ferti-Lome Rose Food containing systemic insecticide", which rose food product is sold by defendants in this district and in interstate commerce in the home garden field as differentiated from the commercial or agricultural field.

15. Prior to the date that the defendants first sold the "Ferti-Lome Rose Food containing systemic insecticide" in the home garden field, they, through their President, H. Dean Smith, had actual notice of the aforesaid limited patent license prohibiting the reformulation and sale of 10% DI-SYSTON granules for use by the home gardener, and the jury so found.

16. Prior to the date that the defendants first sold the "Ferti-Lome Rose Food containing systemic insecticide" in the home garden field, the plaintiff, by the conduct of its agents and employees, had acquiesced in defendants' use of 10% DI-SYSTON granules in the making of said rose food product, and the jury so found.

17. No later than the date that plaintiff brought this patent infringement action, it ceased to acquiesce in defendants' use of 10% DI-SYSTON granules in the making of the "Ferti-Lome Rose Food containing systemic insecticide."

18. Subsequent to the date that plaintiff brought this patent infringement action, defendants purchased 10% DI-SYSTON granules packaged in containers bearing said limited patent license notice and, with actual notice of such limited patent license, reformulated said 10% DI-SYSTON granules in the manufacture of the "Ferti-Lome Rose Food containing systemic insecticide", and sold same in this district and in interstate commerce in the home garden field, and are continuing to do so.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and subject matter of the issues of plaintiff's complaint, including all amendments thereof, under the provisions of Title 28 United States Code, Sections 1332, 1338(a), 1391 and 1400(b), and Title 35 United States Code, Sections 281 et seq.

2. United States Patent No. 2,759,010 is good and valid in law.

3. A patent owner or a licensee thereof can grant licenses under the patent extending to all uses of a patented product or limited to use thereof in a defined field. General Talking Pictures Corp. v. Western Electric Company, Inc., et al, 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273 (1938) affirmed on rehearing, 305 U.S. 124, 59 S.Ct. 116, 83 L.Ed. 81 (1938).

4. A patent owner or a licensee thereof can, by a limited patent license in the form of a written label notice attached to a product made under the patent and sold in the ordinary channels of trade, place an enforceable restriction on the purchaser thereof as to the use to which the purchaser may put the product if said purchaser had actual notice of said limited patent license. General Talking Pictures Corp. v. Western Electric Company, Inc. et al, supra.

490

■ 5. A purchaser of a patented product having actual notice of a limited patent license in the form of a written label notice attached to the product restricting the use to which the purchaser may put the product, and who uses and sells such product in violation of the limited patent license is an infringer of the patent for such product. General Talking Pictures Corp. v. Western Electric Company, Inc. et al, supra.

■ 6. Where the conduct of a patent owner or a licensee thereof is such as to constitute acquiescence in the infringement of the patent, such acquiescence constitutes a license and a defense to an action for a tort growing out of the alleged patent infringement while such license through acquiescence exists. DeForest v. U. S., 273 U.S. 236, 47 S.Ct. 366, 71 L.Ed. 625 (1927).

■ 7. A patent license through acquiescence may be terminated by subsequent conduct of the patent owner or a licensee thereof, such as by the institution of an action for infringement of said patent, since acquiescence in known infringements does not authorize their continuance. Robinson on Patents, Section 834.

■ 8. Plaintiff, an exclusive licensee under the patent in suit, has by a limited patent license in the form of a written label notice attached to patented 10% DI–SYSTON granules that are sold in the ordinary channels of trade, placed an enforceable restriction on the purchaser thereof prohibiting the reformulation and sale of said granules for use by the home gardener if said purchaser had actual notice of said limited patent license.

9. Defendants, having actual notice of a limited patent license in the form of a written label notice attached to 10% DI–SYSTON granules prohibiting the reformulation and sale thereof for use by the home gardener, have infringed the patent in suit when they reformulated and sold said 10% DI–SYSTON granules in the home garden field.

■ 10. The plaintiff, by and through language, written communications, and conduct of its agents and employees, acquiesced in the infringement of the patent in suit by defendants, such acquiescence constituting a license and a defense to an action for a tort growing out of said patent infringement while such license through acquiescence existed.

■ 11. The license through acquiescence established by plaintiff's conduct was terminated no later than the date that plaintiff brought this action for patent infringement against the defendants.

12. Plaintiff is entitled to an injunction against the defendants, enjoining further infringement of United States Patent No. 2,759,010, and to an accounting for damages incurred subsequent to the institution of this patent infringement action, and to interest and costs.

13. Every Finding of Fact which may be deemed to be a Conclusion of Law is hereby adopted as a Conclusion of Law.