**LG ELECTRONICS, INC., Plaintiff and Counterclaim Defendant**

v.

**ASUSTEK COMPUTER, INC., and USUS Computer International, Inc.,**

**Bizcom Electronics, Inc., Compal Electronics, Inc., and Sceptre Technologies, Inc.,**

**First International Computer, Inc. and First International Computer of America, Inc.,**

**Q–Lity Computer, Inc., Quanta Computer, Inc., and Quanta Computer USA, Inc.,**

**Everex Systems, Inc., Defendants and Counterclaimants.**

Nos. C 01–00326 CW, C 01–01375 CW, C 01–01594 CW, C 01–02187 CW, C 01–01552 CW.

United States District Court, N.D. California.

Feb. 6, 2003.

---

Thomas B. Kenworthy, Scott A. Stempel, Collin W. Park, Morgan Lewis & Bockius LLP, Nathan Wayne McCutcheon, Park, Morgan Lewis & Bockius, Washington, DC, Matthew T. Powers, Sidley Austin Brown & Wood LLP, San Francisco, CA, for Plaintiff and Counterclaim Defendant.

Ronald S. Lemieux, Michael E. Sobel, John V. Komar, Vidya R. Bhakar, Squire Sanders & Dempsey L.L.P., Palo Alto, CA, Quoc–Huy D. Do, Bhakar, Sqire Sanders & Dempsey LLP, San Francisco, CA, John Anson Burlingame, Squire Sanders & Demsey, Washington, DC, James Mason Smith, Squire Sanders & Demsey, Palo Alto, CA, Adam R. Fox, Squire Sanders & Demsey, Los Angeles, CA, Daniel Lewis Hawes, Hawes & Associates, New Baltimore, VA, John Anson Burlingame, Squire Sanders & Dempsey, Washington, DC, James Mason Smith, Squire Sanders & Dempsey, Palo Alto, CA, David Morris, Morgan Lweis & Bockius LLP, Washington, DC, for Defendants.

## ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION AND GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION

WILKEN, District Judge.

In these five lawsuits, Plaintiff LG Electronics, Inc. (LGE) raises claims of patent infringement against Defendant companies. In May, 2002, Defendants Asustek Computer, Inc. and Asus Computer International, Inc. (Asustek) and Defendants Q-Lity Computer, Inc., Quanta Computer Inc., and Quanta Computer USA, Inc. (Quanta) moved for summary adjudication. The Court granted Defendants Asustek and Quanta's motions on August 20, 2002. In September, 2002, Defendants First International Computer, Inc. and First International Computer of America, Inc.

(FIC) and Defendants Compal Electronics, Inc., Bizcom Electronics, Inc., and Sceptre Technologies (Compal) moved for summary adjudication, arguing that this Court's August 20 Order also entitled them to summary adjudication. LGE opposed the motion, citing reasons other than those raised in its opposition to Asustek and Quanta's motions why summary adjudication would not be proper. LGE also cross-moved for summary adjudication of the same issues. After considering the papers and oral argument on the motions, the Court concluded that LGE's opposition and cross-motion should be deemed a request for reconsideration of the Court's August 20, 2002 Order. The Court provided the parties with the opportunity to submit additional briefing. After considering all of the papers filed by all parties and oral argument on all motions, the Court now clarifies its prior grant of summary adjudication in favor of Defendants Asustek and Quanta, grants summary adjudication in favor of all Defendants on Defendants' claim that the patent exhaustion doctrine precludes them from being liable for infringement of LGE's device patents, and grants summary adjudication in favor of LGE on LGE's claim that Defendants do not have an implied license to practice LGE's method patents.

## BACKGROUND

LGE owns U.S. Patent Nos. 4,918,645, 4,939,641, 4,962,419, 5,077,733, 5,379,379, and 5,892,509. LGE alleges that Defendants infringe these patents. The motions now pending before the Court all involve one issue: whether, and to what extent, Defendants' purchase of microprocessors and chipsets from Intel, a licensee of LGE, is a defense to LGE's charges of patent infringement.

All Defendants purchase microprocessors and chipsets from Intel or its authorized distributors and install these microprocessors and chipsets into computers that they manufacture.[1] LGE alleges that the computers that incorporate these microprocessors and chipsets infringe its patents. The microprocessors and chipsets are covered by the terms of a licensing agreement that LGE entered into with Intel on September 7, 2000. The LGE–Intel License gives Intel the right to manufacture products that would otherwise infringe any of the patents owned by LGE, including the patents at issue here. The LGE–Intel License expressly disclaims any implied license to Intel customers who combine products covered by the LGE–Intel License with non-Intel products. Defendants were informed of this limitation on the LGE–Intel License when, several days prior to entering into the LGE–Intel License, Intel sent a letter to all its customers, including Defendants, informing them that its license with LGE "does not extend, expressly or by implication to any product that you may make by combining an Intel product with any non-Intel product."

In May, 2002, Asustek and Quanta moved for summary adjudication, contending *inter alia* that under these circumstances LGE's patent rights were exhausted by its licensee Intel's sale of microprocessors and chipsets to Defendants. LGE responded that the sale of the microprocessors and chipsets to Defendants did not exhaust its patent rights because the sale of such unpatented components is not sufficient to exhaust the patentee's patent rights. In its August 20, 2002 Order, the Court rejected LGE's contention that the sale of unpatented components cannot exhaust the

---

1. To the extent that Defendants manufacture products using non-Intel microprocessors and chipsets, those products are not at issue in this motion.

patentee's patent rights. The Court relied on *United States v. Univis Lens Co.*, 316 U.S. 241, 250–51, 62 S.Ct. 1088, 86 L.Ed. 1408 (1942), in which the United States Supreme Court held that:

> where one has sold an uncompleted article which, because it embodies essential features of his patented invention, is within the protection of his patent, and has destined the article to be finished by the purchaser in conformity to the patent, he has sold his invention so far as it is or may be embodied in that particular article.

The Court concluded that LGE's licensee's sale of the unpatented microprocessors and chipsets did in fact exhaust LGE's patent rights because those microprocessors and chipsets were "destined ... to be finished by the purchaser in conformity with the patent" because they have no reasonable non-infringing use. Therefore, the Court granted Asustek and Quanta's motions for summary adjudication on the basis that the patent exhaustion doctrine precluded LGE from recovering damages from Asustek and Quanta for the allegedly infringing devices that incorporate microprocessors and chipsets purchased from Intel.

FIC and Compal now move for summary adjudication of their claim that the patent exhaustion doctrine also precludes LGE from recovering damages from them. LGE opposes the motion. In doing so, LGE now contends for the first time that, even if the sale of unpatented components can exhaust the patentee's patent rights, Intel's sale of microprocessors and chipsets to Defendants did not do so here because that sale was not unconditional as required by the patent exhaustion doctrine. LGE also contends for the first time that the patent exhaustion doctrine cannot provide a defense for purchases made prior to the effective date of the LGE–Intel license and that the patent exhaustion doctrine does not prevent Defen-dants from being liable for infringement of its method patents. Because these issues are relevant to the patent exhaustion defense raised by all of the Defendants, the Court deemed LGE's submissions to be a request for reconsideration. The Court now resolves these issues with respect to all Defendants.

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the nonmoving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. Proc. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288–89 (9th Cir.1987).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Eisenberg*, 815 F.2d at 1289. The Court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir.1991).

Where the moving party does not bear the burden of proof on an issue at trial, the

moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim. *Id.; see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir.1991), *cert. denied*, 502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan*, 929 F.2d at 1409. A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a *prima facie* showing in support of its position on that issue. *See UA Local 343 v. Nor–Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir.1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *See id.; see also Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264–65 (5th Cir.1991). Once it has done so, the non-moving party must set forth specific facts controverting the moving party's *prima facie* case. *See UA Local 343*, 48 F.3d at 1471. The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible." *Id.* This standard does not change merely because resolution of the relevant issue is "highly fact specific." *See id.*

## DISCUSSION

I. LGE's Patent Rights Were Exhausted by its Licensee's Unconditional Sale of Essential Components to Defendants

▮▮ LGE argues that the patent exhaustion doctrine does not protect Defendants from liability for patent infringement because the predicate requirement of an unconditional sale is not met here. According to LGE, Intel's sale of microprocessors and chipsets to Defendants was not unconditional, in that Defendants were expressly informed that their purchase of components from Intel did not grant them a license to infringe LGE's patents by combining those components with other non-Intel parts. LGE is correct that the patent exhaustion doctrine requires an unconditional sale. *B. Braun Medical, Inc. v. Abbott Lab.*, 124 F.3d 1419, 1426 (Fed. Cir.1997) ("[It is] an unconditional sale of a patented device [or its essential components that] exhausts the patentee's right to control the purchaser's use of the device thereafter."). Further, LGE is correct that it is entitled to impose conditions on the sale of its patented products or the essential components of its patented products, if it chooses. *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 706–08 (Fed. Cir.1992) (holding that the patent exhaustion doctrine is only applicable if there is an unconditional sale and that "private parties retain the freedom to contract concerning conditions of sale"). Nor is there any support in the case law for Defendants' contention that a patentee may not impose more onerous conditions on someone who purchases the patented device from a licensee than on the licensee.

However, the mere fact that LGE is entitled to impose conditions on the sale of the essential components of its patented

products does not mean that it actually did so here. To the contrary, Defendants' purchase of the microprocessors and chipsets from Intel was unconditional, in that Defendants' purchase of microprocessors and chipsets from Intel was in no way conditioned on their agreement not to combine the Intel microprocessors and chipsets with other non-Intel parts and then sell the resultant products. *Cf. Mallinckrodt, Inc.*, 976 F.2d at 709 (holding that conditional sales of patented devices are not per se illegal but remanding to the district court to determine if the sales at issue were actually conditional). Nor does the fact that Intel informed its customers that its license with LGE "does not extend, expressly or by implication to any product that [they] may make by combining an Intel product with any non-Intel product" render conditional the sales from Intel to Defendants. As will be discussed in greater detail below, this letter is sufficient to negate the implication of a license to practice the LGE patent that might otherwise arise because Defendants purchased essential components of LGE's patented devices from a licensed source of those components. However, this letter is not sufficient to transform what would otherwise be the unconditional sale of the microprocessors and chipsets into a conditional one. This letter from Intel to its customers does not demonstrate that Defendants agreed as a condition of sale not to combine the microprocessors and chipsets purchased from Intel with non-Intel parts and not to sell the resultant products. Therefore, LGE's licensee's unconditional sale of the essential components of

the patented devices to Defendants exhausted LGE's patent rights.

II. LGE's Claims Against Defendants Based on Purchases Made Prior to the Effective Date of the LGE–Intel License Are Barred by the Terms of the License

■ LGE argues that the patent exhaustion doctrine does not preclude it from pursuing claims with respect to products that incorporate microprocessors and chipsets purchased from Intel prior to the effective date of the LGE–Intel License. LGE reaches this conclusion by reasoning that the patent exhaustion doctrine only applies to sales made by the patentee or its authorized licensees and that Intel was not such an authorized licensee until the effective date of the LGE–Intel License.[2] However, in making this argument, LGE ignores the terms of the LGE–Intel License. According to the terms of the License, LGE released Intel and its customers from liability for any claim of patent infringement that arose prior to the effective date of the agreement to the extent that such claims would be precluded by the terms of the agreement after its effective date. After the effective date of the agreement, Intel is released from liability for infringement because it is a licensee and its customers, including Defendants here, are released from liability for infringement because they are purchasers from a licensee. Therefore, by the very terms of the agreement, Defendants cannot be liable for patent infringement for purchases made prior to the effective date of the agreement.

---

2. LGE also claims support for this position in the Court's August 20, 2002 Order. However, while LGE is correct that the Court stated that its holding was limited to microprocessors and chipsets covered by the LGE–Intel License, the Court did not address the issue of whether microprocessors and chipsets purchased before the effective date of the License are so covered because that issue was not before the Court.

III. Neither the Patent Exhaustion Doctrine nor the Implied License Doctrine Precludes LGE from Pursuing its Method Claims

■ LGE argues that the patent exhaustion doctrine does not preclude it from alleging infringement of its method claims. In this, LGE is correct, as the Court stated in its August 20 Order. August 20 Order at 18–20 (noting that *Bandag, Inc. v. Al Bolser's Tire Stores, Inc.*, 750 F.2d 903 (Fed.Cir.1984) and *Glass Equip. Dev., Inc. v. Besten, Inc.*, 174 F.3d 1337 (Fed. Cir.1999) hold that the sale of a device cannot exhaust the patentee's rights under a separate patent teaching a method of accomplishing a specific function).

■ Therefore, the Court must address the issue reserved in the August 20 Order, namely whether Defendants acquired an implied license to practice the claimed invention. To prevail on an implied license defense, the alleged infringer must show both that the device sold by the patentee has no reasonable, non-infringing use, and that "the circumstances plainly indicate that the grant of a license should be inferred." *Bandag*, 750 F.2d at 925; *Met–Coil Sys. Corp. v. Korners Unlimited*, 803 F.2d 684, 686 (Fed.Cir.1986). This second requirement will be met if the patentee's actions lead the alleged infringer to believe that it has a license to use the invention and, in reliance on those actions, the alleged infringer practices the patent.

■ Here, the circumstances do not plainly indicate that a license was implied, because Intel expressly disclaimed the existence of such a license. Specifically, the record shows that Intel sent letters to Defendants in September, 2000 notifying them of the LGE–Intel License and informing them that "while this patent license that LGE granted to Intel covers Intel's products, it does not extend, expressly or by implication, to any product that you may make by combining an Intel product with any non-Intel product." Therefore, after they received this notice, Defendants cannot claim an implied license to practice any of LGE's method claims and patents.

CONCLUSION

With these clarifications, the Court reaffirms its Order of August 20, 2002, granting Defendants Asustek and Quanta's motion for summary adjudication of their claim that the patent exhaustion doctrine precludes them from being liable for infringement of LGE's device patents. With that Order and this Order, the Court also grants Defendants FIC and Compal's motion for summary adjudication of the same defense. Finally, the Court grants LGE's motion for summary adjudication of its claim that neither the patent exhaustion doctrine nor the implied license doctrine provides Defendants with a defense to LGE's claim that they infringed LGE's method patents.

IT IS SO ORDERED.